UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**ORIGINAL**

- - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA

**SEALED INDICTMENT**

- v. -

16 Cr.

NIMESH PATEL and
DILIP VADLAMUDI,

**16 CRIM 798.**

Defendants.

- - - - - - - - - - - - - - - - - - - X

## COUNT ONE
### (Conspiracy to Commit Honest Services Wire Fraud)

The Grand Jury charges:

### Background

1.   At all times relevant to this Indictment, NIMESH
PATEL, the defendant, was a resident of New Jersey.  PATEL was
employed by a large nonprofit health care organization (the
"Society") with national headquarters located in Westchester,
New York.  At all times relevant to this Indictment, PATEL
worked as a senior director in the applications development
section of the information technology department at the Society.

2.   At various times during his employment at the Society,
PATEL signed an acknowledgement of the Society's conflict of
interest and ethics policy and of his agreement to comply with
that policy.  The policy provided, among other things, that a
conflict of interest exists "when a Society representative . . .
derives or potentially may derive a direct or indirect benefit

JUDGE FORREST

from something the Society is doing or may do." The Society required disclosure of any relationships or any receipt of gifts or compensation which might be considered an actual or potential conflict of interest. The Policy further provided that payments from any individual or business with business with the Society should not be solicited or accepted.

3. At all times relevant to this Indictment, DILIP VADLAMUDI, the defendant, was a resident of Carmel, Indiana. VADLAMDUI was the president and co-founder of a company headquartered in Indiana that, among other things, acted as a temporary staffing company for information technology professionals ("VADLAMUDI Company-1").

4. On or about February 13, 2009, VADLAMUDI Company-1 and the Society entered into a master services agreement (the "MSA") pursuant to which authorized representatives of the Society could sign purchase orders for technical personnel from VADLAMUDI Company-1. During the period from June 2013 through September 2014, the Society procured the services of at least approximately 36 temporary technical personnel from VADLAMUDI Company-1, and paid VADLAMUDI Company-1 at least approximately $2.23 million in fees for such services.

5. DILIP VADLAMUDI, the defendant, is also the owner and operator of another company based in Indiana ("VADLAMUDI Company-2").

2

6.      Pursuant to the role of NIMESH PATEL, the defendant, at the Society, PATEL was responsible for, among other things, reviewing the information technology needs of the Society, and where appropriate, retaining temporary employees from approved vendors to assist in the development of the Society's information technology platforms.  PATEL was one of the individuals with authority to select temporary employees from approved vendors, and PATEL had authority to approve invoices and cause the Society to pay vendors.

## Overview of the Fraud Scheme

7.      Beginning at least in or about September 2012, DILIP VADLAMUDI, the defendant, used a bank account associated with VADLAMUDI Company-2 to make a total of approximately $274,000 in payments to NIMESH PATEL, the defendant, who was using a shell company named Dots Consulting Inc. ("Dots Consulting") to receive the money.  The payments were in exchange for PATEL awarding Society contracts to VADLAMUDI Company-1, and PATEL and VADLAMUDI used email to discuss the amounts that were due and owing from VADLAMUDI to PATEL.  PATEL used the proceeds for personal expenses, including a down payment for his residence, personal credit card bills, and PATEL's life insurance policy.

8.      In or around 2012, 2013, and 2014, the Society had master services agreements with approximately three companies, including VADLAMUDI Company-1, pursuant to which the Society

3

paid for temporary IT workers on an as-needed basis.  NIMESH PATEL, the defendant, and his co-workers were provided with project specifications and a budget with which to meet those specifications.  They had discretion as to which vendor, if any, to hire in order to retain temporary workers.  Generally, other Society employees with responsibilities similar to PATEL used various vendors, including VADLAMUDI Company-1, to meet their project specifications.  For PATEL's projects, PATEL only hired temporary employees from VADLMAUDI Company-1, and not from other vendors who were authorized to provide temporary employees to the Society.

### Bank Transfers between VADLAMUDI and PATEL

9.     On or about October 3, 2012, a bank account in the name "Dots Consulting Inc." was opened at a Wells Fargo bank branch in New Jersey (the "Dots Bank Account").  NIMESH PATEL, the defendant, and PATEL's wife were the two authorized signers for the Dots Bank Account.

10.     The Dots Bank Account was opened with an initial deposit of $100 from the personal bank account of NIMESH PATEL, the defendant.  Aside from that initial deposit and a $3.99 deposit on or about December 5, 2012, all other deposits into the Dots Bank Account came from a bank account in the name of VADLAMUDI Company-2 (the "VADLAMUDI Company-2 Bank Account").

4

11.   The sole signatory for the VADLAMUDI Company-2 Bank
Account was DILIP VADLAMUDI, the defendant.

12.   Below is a chart reflecting the deposits made into the
Dots Bank Account from the VADLAMUDI Company-2 Bank Account:

| Date | Amount | |
|------|--------|--|
| October 15, 2012 | $9,219.00 | |
| January 9, 2013 | $21,041.00 | |
| May 9, 2013 | $21,304.00 | |
| June 25, 2013 | $45,000.00 | |
| November 4, 2013 | $32,358.00 | |
| February 4, 2014 | $51,444.50 | |
| May 13, 2014 | $49,992.70 | |
| September 2, 2014 | $43,578.65 | |

13.   The funds that were paid to the Dots Bank Account were
used for personal expenses of NIMESH PATEL, the defendant,
including, among other things, $80,000 towards the down payment
on PATEL's residence, approximately $132,305 in transfers to
PATEL's personal bank account, approximately $12,480 to pay
American Express bills, and approximately $5,428 in ATM
withdrawals at various locations in New York and New Jersey.

14.    During the course of this criminal scheme, NIMESH PATEL and DILIP VADLAMUDI, the defendants, exchanged emails regarding the kickback scheme.  In particular, on a regular basis, PATEL and VADLAMUDI exchanged spreadsheets listing the names of temporary VADLAMUDI Company-1 employees hired by the Society, along with a kickback amount calculated per employee. For example:

a.    On or about September 3, 2012, VADLAMUDI sent a spreadsheet to PATEL via email, which contained a list of 14 temporary VADLAMUDI Company-1 employees hired by the Society, along with their start dates and hourly rates.  In addition, there is a column titled "Commitment to NP," and for each employee a number between one and four is listed.  These numbers refer to the amount of kickback to be paid by VADLAMUDI to PATEL, per employee per hour.

b.    On or about October 3, 2012, PATEL sent an email to VADLAMUDI, in which PATEL wrote, "I am all set up on my side. Please send me the details on your side ASAP please".  PATEL sent an email to VADLAMUDI on October 4, 2012, writing, in substance and in part, "I was hoping to set everything by this weekend. Based on the spreadsheet you sent [i]t seems that the amt is 9219."

c.    On or about October 9, 2012, PATEL sent an email to VADLAMUDI, in which PATEL provided the name "Dots Consulting

6

Inc." to VADLAMUDI and also provided documents necessary for VADLAMUDI to make payments, including Dots Consulting's incorporation certificate and W9 form.

     d.    On January 31, 2014, VADLAMUDI sent a spreadsheet to PATEL, listing VADLAMUDI Company-1 temporary employees who had been provided to the Society. The spreadsheet contained a column listing the total amount of kickback to be paid to PATEL as $51,444.50.

     e.    On February 3, 2014, VADLAMUDI sent an email to PATEL in which VADLAMUDI wrote, "We have setup ACH for $51444.40 today."

    15.    In addition to awarding contracts to DILIP VADLAMUDI, the defendant, in exchange for the kickbacks described above, NIMESH PATEL, the defendant, also provided to VADLAMUDI inside information regarding the Society's technical needs during the course of their relationship. For example:

     a.    On September 26, 2013, PATEL sent an email to VADLAMUDI. In that email, PATEL sent information regarding potential future technology needs of the Society. Specifically, PATEL advised VADLAMUDI that PATEL had requested internal Society approval to hire five temporary staffers in areas such as "java" programming and "SQL server" programming.

     b.    On October 28, 2013, PATEL's supervisor sent an email to PATEL and two others in the IT department, in which the

7

supervisor indicated that expenses in the department were too high, and department members would not be able to hire additional consultants or staff. The following day, PATEL forwarded the email to his personal email account, and then to VADLAMUDI, writing "No more hiring and expenses for a while as we are running over budget."

     c. On December 11, 2013, PATEL sent an email to VADLAMUDI, in which PATEL (a) advised VADLAMUDI that one of VADLAMUDI Company-1's competitors was spending $3,000 to sponsor the Society's holiday party; (b) indicated that the head of the Society's IT department may reach out to VADLAMUDI for additional sponsorship for the holiday party; and (c) wrote "Just wanted to give you a heads up. [The competitor] is at $3k so you know how to play it when it comes to you[.] please treat this as very confidential."

     d. On January 14, 2014, PATEL's supervisor sent an email to PATEL discussing the Society's budget forecast for a certain project. The following day, PATEL forwarded the email to his personal email account, and then to VADLAMUDI, writing, "FYI [] We need to discuss."

16. NIMESH PATEL, the defendant, made attempts to conceal the nature of his relationship with DILIP VADLAMUDI, the defendant, from his colleagues at the Society. For example, in February 2013, VADLAMUDI sent an email to PATEL and other

8

members of the Society IT department, in which VADLMAUDI invited them to a dinner on February 20, 2013. PATEL replied to all the recipients, declining VADLAMUDI's invitation. On February 20, 2013, PATEL sent an email from his personal email account to VADLAMUDI in which PATEL suggested they have dinner that evening at a restaurant in New Jersey.

17. In or about the fall of 2014, the Society retained a law firm (the "Law Firm") to conduct an internal investigation into allegations of bribery and kickbacks in the Society's IT department. Representatives from the Law Firm interviewed NIMESH PATEL, the defendant, in or about September 2014. During the interview, PATEL advised his interviewers, in substance and in part, that (a) he had only met VADLAMUDI on one or two occasions in the prior five years; (b) he did not have much direct contact with VADLAMUDI; and (c) he never received any money from VADLAMUDI. These statements were false, in that (a) PATEL and VADLAMUDI had a close personal relationship; (b) PATEL and VADLAMUDI exchanged approximately 790 emails in the period from June 2009 to May 2014; and (c) VADLAMUDI paid PATEL approximately $274,000 between October 2012 and September 2014.

## Statutory Allegations

18. From at least in or about October 2012, up to and including at least in or about September 2014, in the Southern District of New York and elsewhere, NIMESH PATEL and DILIP VADLAMUDI, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit honest services wire fraud in violation of Title 18, United States Code, Sections 1343 and 1346.

19. It was a part and an object of the conspiracy that NIMESH PATEL and DILIP VADLAMUDI, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to deprive the Society of the intangible right of honest services, to wit, through kickbacks and/or bribes paid by VADLAMUDI to PATEL, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit, PATEL, while supervising information technology vendors providing services to the Society, received approximately $270,000 in bribes and kickbacks from VADLAMUDI, who owned and operated one of the

10

vendors that did business with the Society.

(Title 18, United States Code, Section 1349.)

## COUNT TWO
## (Travel Act Conspiracy)

The Grand Jury further charges:

20. The allegations contained in paragraphs 1 through 17 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

21. From at least in or about October 2012, up to and including at least in or about September 2014, in the Southern District of New York and elsewhere, NIMESH PATEL and DILIP VADLAMUDI, the defendants, and others known and unknown, willfully and knowingly combined, conspired, confederated and agreed together and with each other to violate Title 18, United States Code, Section 1952(a)(3), to wit, VADLAMUDI paid approximately $270,000 in bribes and kickbacks to PATEL, in exchange for PATEL steering and/or maintaining business contracts and business opportunities from the Society to VADLAMUDI.

22. It was a part and an object of the conspiracy that NIMESH PATEL and DILIP VADLAMUDI, the defendants, would and did travel in interstate commerce and use and cause to be used the mails and facilities in interstate commerce with intent to

11

promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, and thereafter would and did perform and attempt to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity, to wit, in violation of New York Penal Law Sections 180.00 and 180.05, PATEL and VADLAMUDI sent and caused others to send interstate wires, such as emails and bank transfers, to offer, pay, and/or arrange for the payment of kickbacks and/or bribes, in violation of Title 18, United States Code, Section 1952(a)(3).

### Overt Acts

23.  In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.  On or about September 3, 2012, DILIP VADLAMUDI, the defendant, caused an interstate email to be sent to NIMESH PATEL, the defendant, in the Southern District of New York, containing an accounting of bribes and kickbacks.

b.  On or about June 9, 2013, PATEL caused an interstate email to be sent to VADLAMUDI, from the Southern District of New York, containing an accounting of bribes and kickbacks.

(Title 18, United States Code, Section 371.)

## COUNT THREE
### (Money Laundering Conspiracy)

The Grand Jury further charges:

24. The allegations contained in paragraphs 1 through 17 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

25. From at least in or about October 2012 up to and including in or about September 2014, in the Southern District of New York and elsewhere, NIMESH PATEL and DILIP VADLAMUDI, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other, to violate United States Code, Section 1956(a)(1)(B)(i).

26. It was a part and object of the conspiracy that NIMESH PATEL and DILIP VADLAMUDI, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions, to wit, wire transfers, represented the proceeds of some form of unlawful activity, willfully and knowingly would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of the honest services fraud and Travel Act schemes charged in Counts One and

13

Two, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), to wit, PATEL established a shell company which he used to receive from VADLAMUDI the proceeds of the fraudulent schemes described above.

### Overt Acts

27. In furtherance of said conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York:

a. On or about October 3, 2012, NIMESH PATEL, the defendant, opened a bank account in the name of a shell company.

b. On or about September 2, 2014, DILIP VADLAMUDI, the defendant, caused $43,578.65 to be transferred from the VADLAMUDI Company-2 Bank Account to the Dots Consulting Bank Account.

(Title 18, United States Code, Section 1956(h).)

### FORFEITURE ALLEGATION AS TO COUNTS ONE AND TWO

28. As a result of committing the offenses charged in Counts One and Two of this Indictment, NIMESH PATEL and DILIP VADLAMUDI, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property,

14

real and personal, which constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One and Two.

## FORFEITURE ALLEGATION AS TO COUNT THREE

29. As a result of committing the offense alleged in Count Three of this Indictment, NIMESH PATEL and DILIP VADLAMUDI, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal, involved in the offense alleged in Count Three, and any property traceable to such property.

### Substitute Assets Provision

30. If any of the above-described forfeitable property, as a result of any act or omission of NIMESH PATEL and DILIP VADLAMUDI, the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty,

15

it is the intent of the United States, pursuant to Title 21,
United States Code, Section 853(p), and Title 28, United States
Code, Section 2461(c), to seek forfeiture of any other property
of the defendants up to the value of the above forfeitable
property.

   (Title 18, United States Code, Sections 981 and 982;
      Title 21, United State Code, Section 853; and
      Title 28, United States Code, Section 2461.)

FOREPERSON

PREET BHARARA
United States Attorney

16

Form No. USA-33s-274 (Ed. 9-25-58)

---

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**UNITED STATES OF AMERICA**

- v. -

**NIMESH PATEL and**
**DILIP VADLAMUDI,**

**Defendants.**

---

**SEALED INDICTMENT**

16 Cr.

(18 U.S.C. §§ 1349, 371, 1956(h).)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.

---

12/05/16
(CA)
Indictmt Filed under sed.
THIS CASE IS UNASSIGNED AND Puss 11-1-87
_____ for All Purposes
warrants requested. JUDGE PARKER